O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA, a California corporation, <br><br> **Plaintiff,** <br><br> vs. <br><br> FIRST ONE LENDING CORPORATION, a California corporation, JOHN VESCERA, an individual, and Does 1-10. <br><br> **Defendants.** | Case No.: SACV 12-463 DOC(MLGx) <br><br> **ORDER:** <br> **(1) DENYING DEFENDANTS' MOTION TO DISMISS (DKT. 8)** <br> **(2) GRANTING PLAINTIFF'S MOTION FOR PRELIMINATION INJUNCTION (DKT. 13)** |

Before the Court are two motions: (1) a Motion to Dismiss filed by Defendants First One Lending Corporation ("First One") and John Vescera ("Vescera") (Dkt. 8); and (2) a Motion for Preliminary Injunction (Dkt. 13) filed by Plaintiff Neighborhood Assistance Corporation of America ("Plaintiff" or "NACA").

The Court first addresses the Motion to Dismiss, which the Court finds is a matter appropriate for decision without oral argument and DENIES the Motion. *See* Fed. R. Civ. P. 78;

Local R. 7-15.  The Court next addresses the Motion for Preliminary Injunction and, after considering all the moving papers and oral argument, the Court GRANTS the Motion.

## I.    Statement of Facts

The gravamen of Plaintiff's Complaint is that Defendants First One Lending Corporation and John Vescera (collectively, "Defendants") cheat desperate homeowners facing foreclosure by charging these victims one to two thousand dollars each based on false and misleading statements that *Defendants* provide mortgage modification services when, in fact, these services are provided to the public free of charge by *Plaintiff*, which is a non-profit community advocacy organization.  The following summarizes the: (1) allegations in the Complaint and its attached documents, which are the only documents upon which the Court relies in resolving the Motion to Dismiss; and (2) other evidence on which the Court relies, in addition to the Complaint and its attached documents, in resolving the Motion for Preliminary Injunction.

### a.  Plaintiff's non-profit mission and reputation

#### i.  Complaint's allegations

The Complaint alleges that, since 1994, Plaintiff Neighborhood Assistance Corporation of America is a not-for-profit corporation doing business under the trade name "NACA," and that it has developed a national reputation as a loan originator and advocate for low and moderate income homeowners. *See* Compl. ¶¶ 8-12.  In 2008, responding to the onset of the national mortgage crisis, NACA expanded its services to include assisting homeowners saddled with unaffordable mortgage payments and facing foreclosure of their homes.  *Id.*

#### ii.  Additional evidence in the Motion for Preliminary Injunction

Plaintiff's declaration and exhibits reiterates the information listed above and states that Plaintiff provides mortgage-related housing assistance to primarily low and moderate income families in more than twenty-five states and the District of Columbia.  Exum Decl. in Support of Mot. for Preliminary Injunction ("Exum Decl.") ¶ 2.  Prior to 2008, the primary services NACA provided were loan origination services, which NACA continues to provide in partnership with Bank of America and Citibank.  *Id.* ¶ 3.

### b.  Plaintiff's registered and unregistered marks

### i.  Complaint's allegations

Plaintiff has two valid registered servicemarks in the word "NACA" that were deemed incontestable by the U.S. Patent and Trademark Office in 2009.  Compl. ¶ 9.

Plaintiff has a program called the "Home Save Program" that assists homeowners saddled with unaffordable mortgage payments.  *See id.* ¶¶ 13-16.   Plaintiff has invested significant resources into promoting this program.  *See id.*

One of the means by which Plaintiff promotes the program is through events called "Save-the-Dream" events, which are held in large meeting spaces throughout the country.  *See id.*

### ii.  Additional evidence in the Motion for Preliminary Injunction

Plaintiff's declaration and exhibits reiterate the above information.  Exum Decl. ¶ 2.

## c.  Defendants First One and Vescera and their relationship with NMAC and NMHC

### i.  Complaint's allegations

The Complaint alleges that Defendant Vescera is Defendant First One's CEO, President and sole director.  Compl. ¶ 22.  First One allegedly has done, and is currently doing business, under a variety of different names, including National Mortgage Help Center ("NMHC") and National Mortgage Assistance Center ("NMAC").  *Id.* ¶ 18.

### ii.  Additional evidence in the Motion for Preliminary Injunction

The information above is reiterated in Plaintiffs' declarations and exhibits.  (McNamara Decl., Exs. C, D.).  In addition, the evidence shows that First One's promotional materials expressly state that "[t]he NMHC Program is through First One" and "National Mortgage Help Center is a program of First One."  Ahrendt Decl. Ex. A at 7; McNamara Decl. Ex. E at 52. First One's business address as the address for the National Mortgage Help Center: "National Mortgage Help Center / 31831 Camino Capistrano Suite 300B / San Juan Capistrano, Ca 92675."  *Id.,* Ex. E at 54; Ex. E at 47, 48, 51, 53, 56; Exs. F, G, H.

NMAC's website is almost identical to NMHC's website and they share the same telephone number.  *See* McNamara Decl. Exs. B, C.

### d.  Defendants' statements suggesting an association between First One and Plaintiff

#### i.  Complaint's allegations

The Complaint alleges that Defendants First One and Vescera, from May 2009 through the present, have used words, terms, names, devices and false and misleading representations of facts that are intended to and do in fact cause confusion as to First One's association with Plaintiff.  *See generally,* Compl. ¶¶ 24-36.  The Complaint specifically alleges that First One's marketing and promotional materials include several false or misleading statements as part of Defendants' scheme to create the false impression that First One is affiliated with Plaintiff, including the following representations that:

- First One is "a member of **NAHCA**." *Id.* ¶ 31n, Ex. H (emphasis added).
- "First One coordinates each client's financial analysis submission to the **Home Save Program** of the **Neighborhood Assistance** Network of HUD Housing Counselors to assist you with your lender to achieve a result. HUD (Dept. of Housing and Urban Development) Housing Counseling assistance is provided at no-charge and is not contingent on you hiring First One for any other service." *Id.*, ¶ 32b, Ex. I (emphasis added).
- First One (operating as NMHC or NMAC) has been "Helping to **Save the American Dream** since 1995." *Id.* ¶¶  27d, 28 (emphasis added).
- First One (operating as NMHC or NMAC) is a nonprofit organization that educates the general public. *See id.* ¶¶ 27c, 28b.
- First One (operating as NMHC or NMAC) has a "national network of foreclosure prevention specialists" that will negotiate directly with the homeowner's bank to obtain lower monthly payments through a "Mortgage Modification Plan." *Id.,* ¶¶ 27b, 28a.
- falsely imply that First One is approved by HUD for counseling and mortgage modification services. *See id.,* ¶¶ 27d, 28.
- First One has relationships with "all major lenders & loan servicers." *Id.* ¶ 31d.

- "Actual Modifications" were purportedly obtained through First One's "National Mortgage Help Center Program." *Id.* ¶ 31e.

- First One is "a Housing Counseling Public Benefit Corporation," with the purpose of expanding "affordable housing opportunities to the public," and providing "housing counseling services" and assistance to "homeowners to avoid default and foreclosures." *Id.* ¶ 31f, Ex. D.

- First One has already contacted the relevant lender. *See id.* ¶ 31j, Ex. D.

- First One does not share, give, sell or transfer any personal information about its customers. *See id.* ¶ 31m, Ex. G.

- First One offers "free-of-charge housing counseling to assist consumers in making informed and reasonable decisions with respect to their housing goals and provide assistance in resolving their housing problems" and that First One communicates directly with the homeowner's lender. *See id.* ¶ 32a, Ex. I.

### ii.  Additional evidence in the Motion for Preliminary Injunction

Plaintiff's declarations reiterate the allegations in the complaint and its exhibits match several of the exhibits attached to the complaint.  This evidence shows that First One advertises and promotes itself through radio, television, websites and direct mailings.  *Id.; see also* Declaration of LaTosha Martin-Alexis in Support of Motion for Preliminary Injunction ("Martin-Alexis Decl.") ¶ 2; Declaration of Cindy Barber in Support of Motion for Preliminary Injunction ("Barber Decl.") ¶ 2; Declaration of Steve Cooney in Support of Motion for Preliminary Injunction ("Cooney Decl.") ¶ 2.

Plaintiff has included five declarations from First One's customers, all of which follow a similar narrative of consumer confusion.  For brevity's sake, the Court repeats only one here.  Mark Arvizu lives in Chatsworth, California.  Declaration of Mark Arvizu in Support of Motion for Preliminary Injunction ("Arvizu Decl.") ¶ 1.  In early 2011, Mr. Arvizu learned about NACA from a co-worker as a possible resource for a mortgage modification. *Id.* ¶ 2.  Shortly after that, Mr. Arvizu saw a billboard for what he thought was NACA.  *Id.*  He called the telephone number on the billboard, believing he was calling NACA, and spoke to Stacey or Gina at First

One, who assured Mr. Arvizu that he could obtain a loan modification.  *Id.* Mr. Arvizu then received a "Welcome Letter" and other promotional material from First One in the mail.  *Id.* ¶ 3. Based in part on statements in the promotional material, Mr. Arvizu believed that First One was affiliated with NACA. *Id.* In August and September 2011, Mr. Arvizu sent First One the paperwork it had requested as well as $1,850.  *Id.* Contrary to his expectations, First One never contacted his lender.  *Id.* ¶ 5.  Instead, on September 29, 2011, First One sent Mr. Arvizu a letter that reinforced his belief that First One was affiliated with NACA and which stated that his financial analysis had been submitted to his "Housing Counselor of the Neighborhood Assistance Network of HUD Housing Counselors."  *Id.* ¶ 6, Ex. A. The letter included a NACA identification number, a password, and directions to check the status online at NACA's website, www.naca.com. *Id.*  Mr. Arvizu was unable to log on to NACA's website, so after some time, he went to NACA's office, where he learned for the first time that First One was not affiliated with NACA.  *Id.* ¶ 7.

### e.  Defendants' conduct towards its customers and bad reputation

#### i.  Complaint's allegations

The Complaint alleges that, contrary to First One's representation, First One does not in fact provide any free-of-charge housing counseling or assistance in communicating with lenders. *See* Compl.  ¶ 33.  Rather, First One charges consumers typically $1,450 or $1,850 and then uses their personal and financial information—that it promised not to share with third parties— to register a NACA account for the homeowner through NACA's website. *See id.* ¶¶ 33-35.

Then, First One sends the homeowner a letter stating that the financial analysis has been submitted to the homeowner's "Housing Counselor of the Neighborhood Assistance Network of HUD Housing Counselors to assist you with your lender in achieving a result."  *Id.* ¶¶ 35, Ex. J. The letter advises the homeowner to call the "housing counselor assigned to your file to schedule a counseling appointment" and provides Plaintiff's telephone number.  *See id.* The letter also advises the homeowner that he or she has been "assigned" a NACA member number and password.  *See id.*  The letter further advises that the homeowner's loan modification status can be checked online at www.naca.com (Plaintiff's website), and instructs the homeowner to

"click on 'Web-File' icon and log in." *Id.* Finally, the letter states: "Please contact your assigned housing counselor as soon as possible and have your member number, password and the financial analysis package included with this letter handy." *Id.*

Because of these activities, California's Department of Real Estate ("DRE") allegedly sent a cease and desist order to First One. On May 4, 2011, the DRE issued an order requiring First One to desist and refrain from charging, demanding, claiming, collecting and/or receiving advanced fees, "in any form, and under any conditions, with respect to the performance of loan modification or any other form of mortgage loan forbearance services in connection with loans on residential property containing four or fewer dwelling units." *Id.* ¶¶ 5, 21.

### ii.  Additional evidence in the Motion for Preliminary Injunction

Plaintiff's declarations reiterate the allegations in the complaint. In addition, the evidence shows that, after sending customers the letter instructing them to log onto Plaintiff's website, First One absolves itself from all responsibility for working with the homeowners' lender. If complaints are made First One takes the position that it only provides documentation services and that NACA "provides the free of charge assistance phase of the service." (Martin-Alexis Decl., Ex. C.)

Furthermore, the evidence shows that First One's websites also include the following allegedly false and misleading statements that:

- "Only State approved attorneys may legally modify your loan with your lender." McNamara Decl., Ex. C.
- Tell consumers not to give information to other websites, like NACA's website: "Do not give out your information with other Websites." *Id.* Exs. C, D.

First One's promotional materials include a page of "Frequently Asked Questions," that include the following allegedly false and misleading statements:

- "First One is a Housing Counselor Public Benefit Corporation, offering free-of-charge housing counseling to assist consumers in making informed and reasonable decisions with respect to their housing goals and provide assistance in resolving their housing problems. First One coordinates each homeowner's financial

analysis submission to the Home Save Program of the Neighborhood Assistance Network of HUD Housing Counselors to assist you with your lender to achieve a result. [¶] HUD (Dept. of Housing and Urban Development) Housing Counseling assistance is provided at no-charge and is not contingent on you hiring First One for any other service." *Id.*

- "Based on the information you provided during your free initial consultation, a **Housing Analysis** determined that you are **pre-qualified** for either the HAMP (Home Affordable Modification Program) or your lender's Traditional mortgage revision guidelines." *Id.* (emphasis in original).

- "Homeowners who have benefited from our services have received mortgage payment reductions that bring their mortgage payment debt ratio to within 31% or their gross income. Mortgage principal balance reductions have also been achieved and are possible when your current mortgage balance exceeds the value of your home." *Id.*

First One further represents that its staff is "comprised of case managers, loan processors, and housing counselors working on your behalf," and that it provides "housing counseling to assist consumers in making informed and reasonable decisions with the respect to their housing goals and provide assistance in resolving their housing problems." *Id.* First One also claims that it "does not share, give, sell or transfer any personal information about its customers." *Id.*.

### f. Harm to consumers and to Plaintiff

#### i. Complaint's allegations

The Complaint alleges that over 240 homeowners have fallen for First One's scheme and that the scheme is not only likely to cause confusion, but has in fact caused actual confusion as to an affiliation, connection or association between First One and Plaintiff. *See id.* ¶¶ 37-43, 48. First One employees have on at least two occasions responded to customer claimants by falsely stating or implying that First One is affiliated with Plaintiff. *See id.* ¶¶ 38-42. Finally, the Complaint alleges that Plaintiff has been and will continue to be harmed by Defendants' false and misleading representations of affiliation. *See id.* ¶¶ 45, 51-52, 55-57.

### ii.  Additional evidence in the Motion for Preliminary Injunction

Plaintiff's declarations from five consumers further substantiate the above information.

### g.  Present Motions

On April 12, 2012, Defendants filed the present Motion to Dismiss.  *See* Motion to Dismiss ("MTD") (Dkt. 8).  Four days later, on April 16, 2012, Plaintiff filed the present Motion for Preliminary Injunction.  *See* Motion for Preliminary Injunction ("MPI") (Dkt. 13).

## II.  Defendants' Motion to Dismiss

### a.  Legal Standard for a Motion to Dismiss Under 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is usually limited to the contents of the complaint and material properly submitted with the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

**b.  Defendants Are Not Entitled to Dismissal**

Defendants make five arguments in support of their Motion to Dismiss. First, the Court addresses Defendants' three arguments that the Complaint does not state a claim under Section 43(a)(1) of the Lanham Act because the Complaint fails to allege that: (1) Defendants used Plaintiff's registered trademark, "NACA"; (2) this use was in an advertisement or promotion; or (3) Plaintiff was injured, given that Defendants contend that they and Plaintiff are not competitors, Plaintiff does not charge homeowners for its services, and Plaintiff's reputation is still intact. Next, the Court addresses Defendants two affirmative defenses, namely that: (1) "facts" outside the Complaint purportedly show that three of the numerous false or misleading statements alleged in the Complaint are true; and (2) Vescera cannot be personally liable for the corporate acts of First One because Vescera is immune from liability under the federal Volunteer Protection Act ("VPA").

Because the Court rejects all of Defendants' arguments, the Court DENIES Defendants' Motion.

### i. Defendants' three arguments that Plaintiff fails to state a claim

The purpose of the Lanham Act "is to avoid confusion in the marketplace" by allowing a trademark owner to "prevent[ ] others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 806 (9th Cir. 2003); *see also* 15 U.S.C. § 1127. 1

5 U.S.C. § 1125(a), commonly referred to as Section 43(a), essentially creates "a federal law of unfair competition." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir. 1998).

Section 43(a) of the Lanham Act states:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

A claim under Section 43(a)(1)(A)[1] is commonly referred to as a "false association" claim, which is distinct from a "false advertising" claim under Section 43(a)(1)(B)[2]. *See Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995).

In addition, courts also refer to a claim under Section 43(a) as a "reverse palming off" claim where, as here, a defendant allegedly "offer[s] for sale another's product that has been modified slightly and then labeled with a different name" or "markets the product under [the defendant's] own name." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1437 (9th Cir. 1993).

### 1. Defendants' argument that a Section 43(a) claim requires use of plaintiff's trademark is incorrect as a matter of law

Defendants contends the Complaint is deficient because it fails to allege that "First One us[ed] plaintiff['s] trademark 'NACA.'" *See* MTD at 14.

Neither a false association claim under Section 43(a)(1)(A) nor false advertising claim Section 43(a)(1)(B) requires that the defendant use the plaintiff's trademark. Rather, the plain language of the statute Section 43(a) imposes liability for defendant's use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely

---

[1] 15 U.S.C. § 1125(a)(1)(A).

[2] 15 U.S.C. § 1125(a)(1)(B).

cause confusion . . . as to the affiliation . . . or . . . misrepresents the nature, characteristics, qualities . . . of his or her . . . services or commercial activities." 15 U.S.C. § 1125(a)(1).

Indeed, the Ninth Circuit has reversed a dismissal under Rule 12(b)(6) because the "complaint sufficiently allege[d] all elements of a Lanham Act" false advertising claim where the complaint alleged that defendant made false or misleading statements about its *own* services, but made no allegations about the plaintiff's trademark. *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043-44, 1052-54 (9th Cir. 2008). Furthermore, as noted previously, a "reverse palming off" claim under Section 43(a) is based on the defendant's "direct misappropriation of the services or goods of another," often by marketing the plaintiff's services "under [the defendant's] own name." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1437 (9th Cir. 1993). Because a reverse palming off claim is premised on the defendant *concealing* the true origin of the services, the claim by definition does not require the defendant to have used the plaintiff's mark. *Cf. id.*; *see also* 194 A.L.R. Fed. 175 (2004) (noting that a claim under Lanham Act claim under 15 U.S.C. § 1125(a)(1)(A)) for "reverse palming off" requires that: (1) the origination of the goods or services in question with the plaintiff; (2) the defendant's false designation of the origin of those goods or services; and (3) the likelihood of consumer confusion caused by the defendant's false designation of origin).

Furthermore, to the extent that Defendants contend that Section 43(a)(1) applies only to a defendant's use of *registered* trademarks, Defendants are wrong on the law. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998) (describing criteria by which courts determine "whether an unregistered mark is protectable under § 43(a)"). The Ninth Circuit has upheld a jury verdict finding a "false association claim" where the defendant imitated the plaintiff's voice, without any reference to registration of this mark, because a false association claim includes a defendant's use of "a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110-11 (9th Cir. 1992).

Thus, Defendants are simply wrong on the law when they contend that Plaintiff must plead defendant's use of plaintiff's registered or unregistered trademark.

**2. Defendants' argument that a false association claim under Section 43(a)(1)(A) requires that Defendants' conduct occurred in an advertisement or promotion is incorrect as a matter of law**

Defendants contend that a false association claim requires that the conduct giving rise to liability must appear in "a commercial advertisement or promotion."  MTD at 14.

Defendants are simply wrong on the law. While use in commercial advertising is required for a false advertising claim, it is not required for a false affiliation claim. *Compare* 15 U.S.C. § 1125(a)(1)(A) *with* 15 U.S.C. § 1125(a)(1)(B); *see also Summit Tech., Inc. v. High-Line Med. Instruments*, Co., 933 F. Supp. 918, 928-29 (C.D. Cal. 1996) (discussing elements of both claims).  The cases Defendants rely upon for the purported elements of a false association claim—*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 834-835 (9th Cir. 2002), *Newcal Indus.,* 513 F.3d at 1052—concern a false advertising under 15 U.S.C. § 1125(a)(1)(B), not false affiliation under 15 U.S.C. § 1125(a)(1)(A).

**3. Defendants' argument that the injury necessary to have standing to bring a Section 43(a) claim requires the plaintiff be the defendant's competitor or to suffer lost profits is incorrect as a matter of law**

Defendants contend that the Complaint does not allege an injury under Section 43(a) because: (1) First One and Plaintiff are not competitors; (2) Plaintiff is a non-profit that does not charge consumers for its services; or (3) the Complaint alleges that Plaintiff has an "excellent reputation."  *See* Reply at 9; Compl. at 6-7.  While Defendants' arguments are somewhat unclear, Defendants appear to challenge Plaintiff's standing, given that "injury in fact" is one of three elements required to have standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Defendants' rule would exclude from the Lanham Act those most deserving of its protection: non-profit organizations that help the neediest members of society and organizations whose operations are so beyond reproach that their reputations survive others' destructive schemes.  Fortunately, the law is not as mean-spirited as Defendants would wish.  The Ninth Circuit has squarely addressed and refuted Defendants' first argument by holding that "actual competition" between litigants is not required to satisfy standing in a claim brought under Section 43(a)(1).  *Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995).

Regarding the second two arguments, it is well-established that, to "satisfy standing" for a "false association" claim under Section 43(a)(1)(A), a plaintiff "need only allege commercial injury based upon the deceptive use of a trademark or its functional equivalent."  *Id.*; *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109-10, 1010 n. 9 (9th Cir. 1992) (holding that standing was satisfied in a "false association claim" where plaintiff alleged that defendant imitated plaintiff's unique voice).  To "satisfy standing" for a "false advertising" claim under Section 43(a)(1)(B), a plaintiff need only allege "commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant."  *Barrus*, 55 F.3d at 470.  Damage to a plaintiff's "goodwill" constitutes both competitive and commercial injuries under a Section 43(a) claim.  *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (granting preliminary injunction).

Here, the Complaint specifically alleges facts from which it can reasonably be inferred that Defendants' scheme has put Plaintiff's goodwill and reputation in jeopardy. *See* Compl. ¶¶ 45, 51-52, 55-57.  As the Complaint avers, Defendants make false and misleading statements that *Defendants* will provide mortgage modification services and then, after consumers pay one to two thousand dollars, Defendants pass their customers on to *Plaintiff* to provide services that Plaintiff actually provides to the public for free.  This passing on of customers to Plaintiff, in addition to Defendants' use of the NAHCA, NMAC, and NMHC acronyms that resemble Plaintiff's "NACA" trademark and use of slogans resembling Plaintiff's "Home Save" or "Home Save Program" slogans, allow consumers to conflate Defendants and Plaintiff.  Because

consumers are likely to feel ripped off by Defendants and are likely to conflate Defendants and Plaintiff, Defendants' scheme damages and will continue to damage Plaintiff's reputation and good will with the public.  Such damage to a plaintiff's "goodwill" constitutes both competitive and commercial injuries under a Section 43(a) claim.  *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (granting preliminary injunction).

Moreover, the Complaint alleges that Plaintiff is compensated by mortgage servicers for each successful solution obtained through Plaintiff's Home Save Program.  *See* Compl. ¶ 14. Injury to Plaintiff's reputation will likely diminish Plaintiff's ability to attract participants in the Home Save Program (as well as its other programs), which will result in less successful solutions and less revenue than NACA would otherwise obtain.  *See Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981) (holding that business had standing for reverse palming off claim under Section 43(a) because a "plaintiff under section 43(a) need not be in actual competition with the alleged wrongdoer" given that, "[o]n its face, section 43(a) gives standing to sue to 'any person who believes that he is or is likely to be damaged'").

Thus, Defendants' arguments that Plaintiff fails to allege an injury sufficient to have standing is incorrect as a matter of law.

### 4.  Conclusion

In sum, Defendants' three arguments that the Complaint does not state a claim under Section 43(a)(1) of the Lanham Act are incorrect as a matter of law.

### ii.  Defendants' affirmative defenses

Next, the Court addresses Defendants two affirmative defenses, namely that: (1) "facts" outside the Complaint purportedly show that three of the numerous false or misleading statements alleged in the Complaint are true; and (2) Defendant Vescera cannot be personally liable for the corporate acts of Defendant First One because Vescera is immune from liability under the federal Volunteer Protection Act ("VPA").

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact."  *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  However, a motion to dismiss may be granted based on an

affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## 1. Defendants' affirmative defense regarding the falsity of First One's statements is based on facts subject to dispute and thus is not a basis to dismiss Plaintiff's claim

In support of its motion to dismiss, Defendants ask the Court to judicially notice documents outside of the Complaint that purport to show that three of Defendants' allegedly numerous false statements are true.  According to Defendants, these documents show that First One is in fact: (1) a registered NACA referral agent; (2) a HUD approved lender; and (3) a not-for-profit 501(c) corporation. *See* MTD at 16.  The Court cannot consider these facts.

The Court can only take judicial notice of facts that are either: (1) "generally known within the territorial jurisdiction of the trial court"; or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Defendants' facts are not generally known within the Central District of California, nor are they from a source whose accuracy cannot reasonably be questioned.  Indeed, the documents purportedly establishing the facts are all from First One or are based on information First One submitted to NACA's website, the California Secretary of State, or the IRS. Additionally, even if the Court could take judicial notice of the purportedly publically-available documents—First One's restated articles of incorporation, a letter from the IRS to First One, and documents from HUD—the Court cannot take judicial notice of disputed facts included in the documents.  *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Ritz Camera & Image,* 772 F. Supp. 2d at 1109 (a court cannot "take judicial notice of documents for the truth of disputed facts asserted therein").  Finally, the documents do not support the purported facts, and the facts themselves are misleading.

For example, Defendants contend that a printout from NACA's website shows that First One is a "registered NACA referral agent for NACA," but the meaning of that document is not beyond reasonable dispute.  MTD at 16.  The document does not mention the word "referral agent" anywhere on it.  *See* Mariner Decl. ("Defs. RJN re MTD") (Dkt. 8-4) Ex. E.  Indeed,

Plaintiff disputes the meaning of the document, contending that First One is not a NACA Referral Agent and that NACA Referral Agents have nothing to do with NACA's Home Save Program.  *See* Corrected Exum Decl. (Dkt. 28) at ¶¶ 10, 11; *see also* Opp'n to Request for Judicial Notice ("Pl. RJN Opp'n") Ex. A.  Regardless, even if this Court did consider the document, the document does not appear to contradict the Complaint's allegations that First One uses its customers' personal information to register NACA accounts in their name; the list of individuals on the web page provided by Defendants appear consistent with that allegation.

In addition, Defendants contend that a purported letter from HUD and a printout from HUD's website show that "First One is a HUD approved lender," but the meaning of those documents is not beyond reasonable dispute.  *See* MTD 16; Defs. RJN re MTD Ex. C, D.  The purported letter from HUD states that First One is approved by HUD as a "Title I" lender "to originate, underwrite, fund, own and service Title I Property Improvement and Manufactured Housing loans."  *See* Defs. RJN re MTD Ex. C at 9.  Yet, Plaintiff contends that HUD has separate approvals for lending and for Housing Counseling and that First One is *not* approved by HUD for Housing Counseling or Foreclosure Avoidance Counseling, which are the services First One advertises and promotes.  *See* Pl. RJN Opp'n, Exs. A, B.  Plaintiff argues that First One's repeated references to HUD approval are misleading because they imply that First One, like Plaintiff, is approved by HUD *for Housing Counseling and Foreclosure Avoidance Counseling*, and, as alleged in the Complaint, these misleading statements and others create the impression that First One is affiliated with Plaintiff.

Furthermore, Defendants contend that First One's purported Articles of Incorporation and an IRS Official Notice show that "First One is a not for profit 501(c) corporation," but the meaning of those documents is not beyond reasonable dispute given that they contradict each other.  *See* MTD 16.  The Articles of Incorporation state that First One is a "501(c)(3)" non-profit, which is inconsistent with the IRS Official Notice, which states that First One is exempt under section "501(c)(4)," not 501(c)(3).  *Compare* Defs. RJN re MTD Ex. A *with* Ex. B. Additionally, Plaintiff provides a webpage printout of a LexisNexis search of the California Secretary of State records that lists "First One Lending Corporation" as "For Profit."  *See*

McNamara Decl. (Dkt. 23), Ex. A.  In light of the contradiction between the Articles of Incorporation, the IRS Official Notice, and Plaintiff's own evidence, this Court can not say that any of those documents are beyond reasonable dispute.

Finally, even if the Court could take judicial notice of Defendants' facts, these facts would not entitled Defendant to dismissal.  Even if Defendant is a registered referral agent of Plaintiff—which the facts do not suggest—being such an agent would not entitle Defendant to create confusion in the marketplace by passing Plaintiff's services off as First One's services.  Similarly, regarding Defendants' statements about its non-profit status and HUD relationship, even if these *two* statements are not misleading, such a finding does not refute Plaintiff's allegations that numerous other statements are misrepresentations.

Thus, the Court DENIES Defendants' request for judicial notice and, given the absence of other facts within the Complaint to support Defendants' position, the Court is not persuaded by Defendants' affirmative defense that some of its allegedly false statements are true.

### 2.   Defendants' affirmative defense regarding Vescera's immunity is based on facts subject to dispute and thus is not a basis to dismiss Plaintiff's claim

Defendants contend that Vescera cannot be personally liable for the corporate acts of First One because Vescera is immune from liability under the federal Volunteer Protection Act ("VPA").  MTD at 17.  The VPA provides that "no volunteer of a nonprofit organization . . . shall be liable for harm caused by an act or omission of the volunteer" if several requirements are met.  *See* 42 U.S.C.A. § 14503(a); *Armendarez v. Glendale Youth Ctr., Inc.*, 265 F. Supp. 2d 1136, 1141 (D. Ariz. 2003) (granting motion to dismiss where plaintiff "stipulate[d] that the [defendants] are volunteers within the meaning of the VPA" and "fail[ed] to discuss" both the VPA's "elements" and "exceptions").

The few courts to address the VPA's protections appear to treat it as an affirmative defense akin to immunity.  *Armendarez*, 265 F. Supp. 2d at 1141 (granting motion to dismiss and noting that "dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense"); *Lomando v. United States*, 667 F.3d 363, 370

(3d Cir. 2011) ("[T]he VPA . . . grants immunity only to volunteers of nonprofit organizations."). As an affirmative defense, the VPA does not entitle Defendants to dismissal under Rule 12(b)(6) unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *cf. Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (holding that qualified immunity is an affirmative defense and thus plaintiff has no "obligation to anticipate such a defense by stating in his complaint" any facts to avoid the defense). Here, as discussed above, there are several fact disputes; for example, Plaintiff alleges that First One is a "for-profit corporation," and Defendants' VPA argument depends on this allegation being false. *See* Compl. at ¶ 18.

Thus, Defendants' affirmative defense that Vescera is entitled to VPA immunity is not a valid basis for dismissal under Rule 12(b)(6).

### c.   Conclusion

Because the Court rejects all three of Defendants' arguments that the Complaint fails to state a claim and rejects Defendants' two affirmative defenses as invalid bases for granting a Rule 12(b)(6) motion, the Court DENIES Defendants' Motion to Dismiss.

### III.   Plaintiff's Preliminary Injunction

Plaintiff seeks a preliminary injunction under Federal Rule of Civil Procedure 65(a) against Defendants First One and John Vescera enjoining them from making several allegedly false and misleading statements about Defendants' services and affiliation with Plaintiff. *See* Notice of MPI (Dkt. 13).

### a.   Legal Standard for a Preliminary Injunction

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, a preliminary injunctive relief is "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

In the Ninth Circuit, a plaintiff is entitled to a preliminary injunction if she satisfies either of two tests: (1) the *Winter* factor test; or (2) the "sliding scale" test, also referred to as the "serious questions" test.[3]  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations.  *See id.* at 1134-35.

Under the *Winter* factor test, a plaintiff is entitled to a preliminary injunction if she establishes that: (1) she is "likely to succeed on the merits"; (2) the "balance of equities tips in [plaintiff's] favor"; (3) she is "likely to suffer irreparable harm in the absence of preliminary relief"; and (4) a preliminary injunction is in the public interest.  *Winter,* 555 U.S. at 20; *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).

Under the sliding scale test, a plaintiff is entitled to a preliminary injunction if she establishes: (1) "serious questions going to the merits"; (2) "a balance of hardships that tips sharply towards the plaintiff"; (3) "a likelihood of irreparable injury"; and (2) a preliminary injunction is in the public interest.  *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011) (noting that the last two factors are identical to two of the factors in *Winter*).  While the test "requires the plaintiff to make a showing on all four prongs," the showing need not be equally strong.[4]  *See id.*

---

[3] A plaintiff may also obtain a preliminary injunction without satisfying either of these two tests if a statute provides for a lesser showing.  *See e.g., Tennessee Valley Authority v. Hill*, 437 US 153, 194 (1978); *United States v. Estate Pres. Services*, 202 F.3d 1093, 1098 (9th Cir. 2000) ("The traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction.").

[4] In *Alliance for the Wild Rockies*, the Ninth Circuit followed the overwhelming majority of Circuits to hold that the sliding scale test survived the Supreme Court's decision in *Winter*.  *See Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011) (reversing denial of preliminary injunction because district court's failure to apply the "serious questions" test was "an error of law"); *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582

Due to the urgency of obtaining preliminary injunctive relief, the "trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *Rosen Entm't Sys., LP v. Icon Enters., Inc.*, 359 F. Supp. 2d 902, 905 (C.D. Cal. 2005) (noting that district courts have the discretion "to

F.3d 721, 725 (7th Cir. 2009) (Easterbrook, J.) ("[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (emphasis in original); *but cf. Real Truth About Obama, Inc., v. Fed. Election Comm'n*, 575 F.3d 343, 347 (4th Cir. 2009) (holding that the "sliding scale approach" does not survive the *Winter* decision) *vacated on other grounds by* 130 S.Ct. 2371 (2010). The Ninth Circuit's holding that the sliding scale test survives *Winter* is also consistent with scholars' conclusions and the Supreme Court's own statements. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting) ("This Court has never rejected [the sliding scale] formulation, and I do not believe it does so today."); Bethany M. Bates, <u>Reconciliation After Winter: The Standard for Preliminary Injunctions in Federal Courts</u>, 111 Colum. L. Rev. 1522, 1523, 1552-53 (2011) (explaining that the sliding scale analysis survives *Winter* because "contemporary Supreme Court cases also support the use of the sliding scale approach" and *Winter* merely held that "only showing a 'possibility' of irreparable harm was not enough" to obtain a preliminary injunction, but "failed to comment on whether courts could use a sliding scale analysis or whether a movant could be granted a preliminary injunction based on a showing that there are serious questions going to the merits").

consider otherwise inadmissible evidence in ruling on the merits of an application for a preliminary injunction"). For example, a preliminary injunction may be granted based on affidavits or the allegations in a "verified complaint," despite their lack of conformity with the Federal Rules of Evidence regarding hearsay and personal knowledge. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972); *Flynt*, 734 F.2d at 1394; § 2949 Procedure on an Application for a Preliminary Injunction, 11A Fed. Prac. & Proc. Civ. § 2949 (2d ed.).

### b. Plaintiff is entitled to a preliminary injunction

Under either the *Winter* or sliding scale test, Plaintiff is entitled to a preliminary injunction to enjoin Defendants from making several allegedly false and misleading statements about Defendants' services and affiliation with Plaintiff.

### i. Plaintiff is likely to succeed on the merits of its false association claim

Plaintiff satisfies both the *Winter* and sliding scale test because Plaintiff has shown that it is likely to succeed on the merits. *See Winter,* 555 U.S. at 20 ("likely to succeed on the merits"); *Alliance for the Wild Rockies*, 632 F.3d at 1135 ("serious questions going to the merits"). Plaintiff is likely to succeed on the merits of its false association claim under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), based on Defendants allegedly charging homeowners one to two thousand dollars each using false and misleading statements that *Defendants* provide mortgage modification services when, in fact, these services are provided to the public free of charge by *Plaintiff*. Compl. (Dkt. 1) at ¶ 46-52).[5]

As noted previously, a claim under Section 43(a)(1)(A) is commonly referred to as a "false association" claim. *See Barrus v. Sylvania*, 55 F.3d 468, 469-70 (9th Cir. 1995). Courts also refer to a claim under Section 43(a) as a "reverse palming off" claim where, as here, a

---

[5] Because the Court concludes the Plaintiff is likely to succeed on its false association claim under Section 43(a)(1)(A), the Court does not address Plaintiff's claims under the Section 43(a)(1)(B) or California common law unfair competition. *See* Compl. (Dkt. 1) at ¶¶ 53-58.

defendant allegedly "offer[s] for sale another's product that has been modified slightly and then labeled with a different name" or "markets the product under [the defendant's] own name." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1437 (9th Cir. 1993). Such a claim exists where the defendant imitates the trademark of a more well-known plaintiff, thus "appropriating [plaintiff's] reputation in the marketplace for [defendant's] own purpose and gain." *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 777 (9th Cir. 1981); McCarthy on Trademarks and Unfair Competition § 25:2 (4th ed.) ("Palming off is an attempt to make the purchaser believe that the product of the [defendant] is that of his better known competitor.").[6]

The Court analyzes below each one of the elements of a reverse palming off/false association claim under Section 43(a)(1)(A), which are that: (1) the defendant uses a designation—meaning "any word, term, name, device, or any combination thereof"—"or any false designation of origin . . . or false or misleading representation of fact"; (2) defendant's use is "likely to cause confusion, mistake, or deception" as to "the affiliation, connection, or association of defendant with another person" or "as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person"; (3) defendant's use was in interstate commerce; (4) defendant's use was in connection with goods or services; and (5) plaintiff has been or is likely to be damaged by these acts.  *See* 15 U.S.C. § 1125(a)(1)(A); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996) (breaking down statute into elements).

### 1.  All of Defendants' evidentiary objections are overruled

---

[6] In the previous section, the Court concluded that Defendants did not meet their burden under Rule 12(b)(6) to show that Plaintiff failed to state a claim, and thus denied Defendants' Motion to Dismiss.  However, because the burden is on Plaintiff to show that it is entitled to a preliminary injunction, the Court here reviews all the elements of Plaintiff's claim when determining whether Plaintiff is likely to succeed on the merits.

In analyzing the merits of Plaintiff's claim, the Court overrules Defendants' several objections to Plaintiff's affidavits because, contrary to Defendants' arguments, a preliminary injunction may be granted based on affidavits or the allegations in a "verified complaint," despite their lack of conformity with the Federal Rules of Evidence regarding hearsay and personal knowledge.  *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972); § 2949 Procedure on an Application for a Preliminary Injunction, 11A Fed. Prac. & Proc. Civ. § 2949 (2d ed.).

### 2.  First element: Defendants' use of words, terms and names

Plaintiff will likely be able to show that Defendants, either through First One alone or organizations they control, use words, terms, and names that mislead consumers into believing First One is Plaintiff NACA, that is, a non-profit organization that provides free housing counseling to help struggling homeowners modify their existing loans.  *See* Barber Decl., Ex. A; Ahrendt Decl. Ex. A; McNamara Decl., Exs. D-I.  These several exhibits show that Defendants' use consists of:

- The acronym NAHCA, used by First One
- The acronym NMAC, used by National Mortgage Assistance Center ("NMAC")
- The acronym NMHC, used by National Mortgage Help Center ("NMHC")
- Slogans such as "Helping to Save the American Dream since 1995" and "Helping Homeowners to Save Their Dream," used by NMHC and NMAC respectively
- Phrases such as "Home Save Program of the Neighborhood Assistance Network of HUD Counselors," used by First One

Defendants contend that some of these statements can not be attributed to First One because First One is a separate entity from NMAC or NMHC.  Defendants contend that First One merely hired NMHC for marketing purposes for a few months in early 2011.  Opp'n to MPI at 9:12-10:6.  Defendants offer no explanation as to the relationship between First One and NMAC, and Plaintiff provides ample evidence to contradict Defendants' narrative.

Plaintiff will likely be able to show that First One is NMHC.  First One's promotional materials expressly state that "[t]he NMHC Program is through First One" and "National

Mortgage Help Center is a program of First One."  Ahrendt Decl., Ex. A at 7; McNamara Decl., Ex. E at 52.  First One's business address as the address for the National Mortgage Help Center: "National Mortgage Help Center / 31831 Camino Capistrano Suite 300B / San Juan Capistrano, Ca 92675."  *Id.,* Ex. E p. 54; *see also id.,* Ex. E pp 47, 48, 51, 53, 56; Ex. F, G, H).

Plaintiff will likely be able to show that First One is also NMAC.  NMAC's website is almost identical to NMHC's website and they share the same telephone number.  *See* McNamara Decl., Exs. B, C.

### 3.  Second element: Defendants' use is likely to cause confusion

Plaintiff will likely be able to show that Defendants' use of acronyms, slogans and phrases are likely to cause confusion with four of Plaintiff's marks.  Specifically, the following are likely to be confused:

- Plaintiff's incontestable trademark "NACA" is likely to be confused with Defendants' acronyms NAHCA, NMAC and NMHC

- Plaintiff's phrase "Home Save Program" and Plaintiff's name "Neighborhood Assistance Corporation of America" is likely to be confused with Defendants' phrase "Home Save Program of the Neighborhood Assistance Network of HUD Counselors"

- Plaintiff's slogan "Save-the-Dream" and is likely to be confused with Defendants' slogans "Helping to Save the American Dream since 1995" and "Helping Homeowners to Save Their Dream"

Plaintiff will likely be able to show a likelihood of confusion based on the following factors: (1) the strength of plaintiff's marks; (2) similarity in appearance, sound, and meaning between defendant's use and plaintiff's marks; (3) the class of goods or services in question; (4) the marketing channels; (5) evidence of actual confusion; and (6) defendant's intent in selecting and using its designation.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178-1179 (9th Cir. Cal. 1988); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 807 (9th Cir. 2003) (noting that "likelihood of confusion" test applies to claims under 15 U.S.C. § 1125(a)(1)(A) based on defendants' use that is "likely to cause confusion . . . as to the affiliation, connection, or association" with plaintiff).  "The test is a fluid one and the plaintiff

need not satisfy every factor, provided that strong showings are made with respect to some of them." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007).

Regarding the first factor, strength of Plaintiff's marks, Plaintiff's "NACA" mark is the strongest kind of mark because it is a registered trademark that became incontestable in 2009. The other three marks are likely protected because they are at minimum descriptive marks with "secondary meaning" in the marketplace, as shown by the substantial time and money Plaintiff spent promoting itself, its Home Same Program, and Save the Dream Events. *See* Corrected Exum Decl. ¶¶ 5-6; *see also Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (describing ability of descriptive marks to obtain protection when they attain secondary meaning). Furthermore, it is appropriate for a court to grant a preliminary injunction if a plaintiff has even a "fair chance" of proving secondary meaning of its descriptive mark. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984).

Regarding the second factor, there is a great similarity between Defendants' use and Plaintiff's marks. One of Defendants' acronyms (NAHCA) differs from Plaintiff's incontestable trademark (NACA) only because Defendants insert an "H" in the middle. Defendants' other two acronyms (NMAC and NMHC) and Plaintiff's incontestable trademark are each four letters, starting with N and ending in C. Defendants' "Home Save Program of the Neighborhood Assistance Network of HUD Counselors" uses the entirety of Plaintiff's "Home Save Program" mark and the first half of Plaintiff's four-word name. Finally, Defendants' use of the slogans "Helping to Save the American Dream since 1995" and "Helping Homeowners to Save Their Dream" includes all the words in Plaintiff's "Save the Dream" mark. The chart below demonstrates these similarities.

| Plaintiff's marks | Defendants' use |
| --- | --- |
| NACA | NAHCA, NMAC, and/or NMHC |
| Home Save Program | Home Save Program of the Neighborhood |
| Neighborhood Assistance | Assistance Network of HUD Counselors |
| Corporation of America | |
| "Save the Dream" and/or "Save-the- | "Helping to Save the American Dream since 1995" |

| Dream" | and "Helping Homeowners to Save Their Dream" |

Regarding the third factor—similar services offered by the parties—Defendants purport to offer *identical* services as Plaintiff; indeed, the services that First One offers are *Plaintiff's* services.  Specifically, NMAC and NMHC claim to be non-profits that educate the general public, have a "national network of foreclosure prevention specialists," and have relationships with other entities that can evaluate homeowners' qualifications for a mortgage payment reduction.  *See, e.g.,* Barber Decl., Ex. A; Ahrendt Decl. Ex. A.  Then, after the homeowner pays typically $1,450 or $1,850, Defendants register the homeowner via Plaintiff's website to participate in Plaintiff's Home Save Program, notifies the homeowner that he or she needs to contact his or her "Housing Counselor of the Neighborhood Assistance Network of HUD Housing Counselors," and provides Plaintiff's telephone number and internet address for doing so.  *See* Cooney Decl., Ex. C; Barber Decl., Ex. B; Ahrendt Decl. Ex. F.

Regarding the fourth factor—similar marketing channels—Defendants and Plaintiff both use the internet.  *See* Exum Decl., ¶¶ 5-7.

Regarding the fifth factor—evidence of actual confusion—Plaintiff has submitted significant evidence of actual confusion by five of Defendants' dissatisfied customers.  *See, e.g.,* Martin-Alexis Decl., ¶¶ 6-8; Cooney Decl., ¶¶ 6-8; Barber Decl., ¶¶ 5-7; Ahrendt Decl. ¶¶ 9-10.

Most tellingly, regarding the sixth factor—defendant's intent—Defendants' use of all *four* of Plaintiff's marks, combined with Defendants' conduct towards its customers that likely violates California laws, indicates that Defendants are acting in bad faith.[7]

### 4.  Third element: Defendants' use is in interstate commerce

Plaintiff will be able to show that Defendants' use occurred in interstate commerce, given that Defendants' statements appear on websites available to anyone in the United States and First One sent materials to consumers in Georgia and New Mexico.  *See* McNamara Decl. Ex.

---

[7] The Court discusses Defendants' likely violations of Sections 2944.6 and 2944.7 of the California Civil Code in a later section of this order.

G, F.  Furthermore, Defendants have multiple customers across the nation.  *See* Martin-Alexis Decl. (customer who lives in North Carolina); Ahrendt Decl. (customer who lives in Wisconsin).

### 5.  Fourth element: Defendants' use is in connection to services

Plaintiff will be able to show that Defendants' use occurred in connection to services, because Defendants' use of Plaintiff's four marks occurred in connection to Defendants' promotion of and contact with customers about its services.  *See, e.g.,* Barber Decl., Exs. A, B; Ahrendt Decl. Exs. A, F, Cooney Decl., Ex. C.

### 6.  Fifth element: Defendants' use has and is likely to damage Plaintiff

Plaintiff will likely be able to show that is has been and will continue to be harmed by Defendants' use of false and misleading claims of affiliation.  Loss of good will or the loss of the ability to control one's own reputation is a cognizable harm under the Lanham Act. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).  Customers' conflation of Defendants with Plaintiff is harmful because Defendants' conduct leaves many customers feeling that they had been cheated or ripped off.  *See, e.g.,* Martin-Alexis Decl., ¶¶ 7-8; Cooney Decl., ¶ 8; Barber Decl., ¶ 7; Ahrendt Decl., ¶ 10; Arvizu Decl., ¶¶ 8-10.  Such confusion interferes with Plaintiff's right to control its own reputation and has caused and will continue to cause a loss of Plaintiff's good will.  *See* Exum Decl., ¶¶ 5-6, 12-14; Baber-Smith Decl., ¶¶ 3-6.

### 7.  Conclusion

In sum, Plaintiff is likely to succeed on the merits of its false association claim under Section 43(a)(1)(A).

### ii.  Plaintiff is likely to suffer irreparable harm

Plaintiff satisfies both the *Winter* and sliding scale test because Plaintiff has shown that it will likely suffer "irreparable harm in the absence of preliminary relief."  *Winter,* 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"[I]rreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim." *Brookfield Communications, Inc. v. W. Coast Entm't*

*Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (9th Cir. 1989) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").

Even without this presumption, Plaintiff will likely suffer irreparable harm in the absence of a preliminary injunction. The potential loss of good will or the loss of the ability to control one's reputation constitutes irreparable harm for purposes of preliminary injunctive relief. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) (finding irreparable injury where "district court could reasonably have concluded that continuing infringement would result in loss of control over [plaintiff's] reputation and loss of good will"). The loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss. *See Rent-a-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) ("[W]e have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm.").

Defendants contend that Plaintiff has not and will not be irreparably harmed because Plaintiff continues to enjoy an excellent reputation and is a non-profit that, by definition, can not suffer lost profits. Opp'n to MPI at 10-11. The Court rejects those argument as a matter of law and for the same reasons it did so in analyzing the Motion to Dismiss.

To the extent that Defendants challenge the sufficiency of Plaintiff's evidence, courts in the Ninth Circuit have granted preliminary injunctions for a claim under the same statute at issue here because evidence that only *one* customer was dissatisfied with the defendant's product was enough to show a likely "irreparable injury to [plaintiff's] reputation and goodwill." *See AFL Telecomms. LLC v. Fiberoptic Hardware*, LLC, 2011 U.S. Dist. LEXIS 106889 *19-20, *27 (D. Ariz. 2011) (granting preliminary injunction on plaintiff's claim under 15 U.S.C. §

1125(a)(1)(A) based on defendant's sale of a modified version of the plaintiff's product that plaintiff did not authorize for sale in the U.S.). Here, Plaintiff has presented declarations from *five* First One customers demonstrating actual confusion as to an affiliation between First One and Plaintiff and dissatisfaction with First One's services.

Furthermore, Defendants' alleged scheme to lure desperate homeowners into *paying* one to two thousand dollars each to obtain mortgage assistance services that Plaintiff offers to the public *for free* is obviously contrary to Plaintiff's core mission. *See* Exum Decl., ¶ 12-14. Because Plaintiff's Home Save Program is free and is promoted as free, any perceived affiliation between First One and Plaintiff will give consumers the false impression that Plaintiff is being deceptive. *Id.* Homeowner will likely believe that, while *Plaintiff* does not technically charge homeowners, *its purported affiliate*, First One, charges over a thousand dollars, as a gate keeper for Plaintiff's services. *Id.*

Finally, First One's false representations of affiliation are harmful to Plaintiff's reputation, even if the homeowner eventually learns that Plaintiff is not affiliated with First One. *Id.* Homeowners who have paid a third party a fee before working with Plaintiff are much more likely to view the entire mortgage modification business, including Plaintiff's Home Save Program, as a scam.

In sum, Plaintiff has easily shown that Defendants are causing and will continue to cause Plaintiff irreparable harm.

### iii.   The balance of the equities tip sharply in Plaintiff's favor

Plaintiff satisfies both the *Winter* and sliding scale test because Plaintiff has shown that the equities tip sharply in its favor. *See Winter,* 555 U.S. at 20 ("balance of equities tips in [plaintiff's] favor"); *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a balance of hardships that tips sharply towards the plaintiff").

The balance of equities weighs heavily in Plaintiff's favor. Plaintiff has a strong interest in protecting its reputation and goodwill, which will be irreparably harmed if a preliminary injunction is not issued. *See* Exum Decl., ¶¶ 5-6, 12-14. Defendants, in contrast, have no legitimate interest in continuing to make false statements about First One's services and false

and misleading statements about First One's affiliation with Plaintiff.  Thus, Defendants will suffer no actual harm if the injunction issues.

### iv.  A preliminary injunction is in the public interest

Plaintiff satisfies both the *Winter* and sliding scale test because Plaintiff has shown a preliminary injunction is in the public interest.  *Winter,* 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011).

All too frequently, intellectual property disputes between two faceless entities can make the judiciary appear to the public like a mere handmaiden to corporate interests, blessing corporations' efforts to commodify an ever-growing swath of the nation's intellectual capital. This case is a refreshing reminder that the policy justification for trademark law is to protect *human beings*, not corporations.[8]  The purpose of the Lanham Act is "to protect the public" from false and deceptive practices that create confusion in the marketplace.  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982) (upholding preliminary injunction and noting that "[u]nlike prior law, the Lanham Act is directed toward protecting the consumer").  The Lanham Act accomplishes this goal by allowing a trademark owner to "prevent[ ] others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner."  *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 806 (9th Cir. 2003); *see also* 15 U.S.C. § 1127.

A preliminary injunction enjoining Defendants from making false statements about First One's services and false and misleading statements about its affiliation with Plaintiff would be extremely beneficial to the public.  Defendants' scheme has caused significant harm to vulnerable members of the public.  Defendants' scheme also would appear to violate a number

---

[8] As Judge Nelson of the Supreme Court of Montana recently noted, there is a difference.  *W. Tradition P'ship, Inc. v. Attorney Gen. of State*, 363 Mont. 220, 275-76 (2011) (Nelson, J. dissenting) ("Corporations are not persons. Human beings are persons, and it is an affront to the inviolable dignity of our species that courts have created a legal fiction which forces people— human beings—to share fundamental, natural rights with soulless creations of government.").

of consumer protection laws, including Section 2944.6 of the California Civil Code (which requires any person providing loan modification services to provide written notice that the services may be obtained from other sources free of charge); Section 2944.7 of the California Civil Code (which prohibits any person providing loan modification services from collecting advanced fees); Section 1770 of the California Civil Code (which prohibits misrepresentations of affiliation, connection or association); and California's Financial Information Privacy Act (which prohibits the sharing of financial information).  Furthermore, Defendants appear to be in violation of a May 4, 2011 California Department of Real Estate order to desist and refrain from "[d]emanding, claiming, collecting and/or receiving advance fees for loan modification services." *See* McNamara Decl., Ex. P.  The public interest would be served by the requested injunction, which, among other things, would prohibit Defendants from making a number of specific false or misleading statements it currently uses to perpetuate their deceptive scheme.

### v.  Conclusion

In sum, Plaintiff is entitled to a preliminary injunction under either the *Winter* or the sliding scale test.

### IV.   Disposition

For the foregoing reasons, the Court: (1) DENIES Defendants Motion to Dismiss (Dkt. 8); and (2) GRANTS Plaintiff's Motion for Preliminary Injunction (Dkt. 13).  Specifically, the Court ORDERS that First One, Vescera, their agents, employees, attorneys and all those in active concert or participation with them are enjoined from doing the following conduct:

1. Making any statements that are calculated to or likely to create the impression that First One and NACA are affiliated, connected or associated;

2. Using the word NACA individually or as part of NACA's web address, www.naca.com, on any website controlled by Defendants or its agents, in any advertising or promotional materials, or in any other written materials provided to First One's customers or potential customers;

3. Referring any person to NACA;

4. Registering any person to become a NACA member through NACA's website, www.naca.com;

5. Providing any person with NACA's telephone number, 1-888-302-6222;

6. Making any statements that are calculated to or likely to create the impression that First One, either individually or through an affiliated company, provides loan modification services;

7. Making any statements that are calculated to or likely to create the impression that First One, either individually or through an affiliated company, provides housing counseling services;

8. Making any statements that are calculated to or likely to create the impression that First One is approved by the U.S. Department of Housing and Urban Development ("HUD") to provide housing counseling services;

9. Making any statements that advise consumers not to provide information to other websites;

10. Making any statements that are calculated to or likely to create the impression that only attorneys can provide loan modification services;

11. Making any statements that are calculated to or likely to create the impression that a consumer has been pre-qualified for a loan modification unless the consumer's lender has stated that the consumer is pre-qualified in writing;

12. Using the phrase "Home Save" or "Home Save Program" in any advertising, promotional materials, or other materials provided to customers or potential customers; and

13. Using the phrase "Neighborhood Assistance," in any advertising, promotional materials, or other materials provided to customers or potential customers.


DATED:      May 15, 2012

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE