# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIGHBORHOOD ASSISTANCE CORPORATION OF AMERICA, a Massachusetts Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIRST ONE LENDING CORPORATION, a California Corporation, JOHN VESCERA, an individual, BILL MARINER, an individual, RANDA EL-FARRA, an individual, and Does 1-10,<br>Defendants. | CASE NO. SACV 12-0463 DOC (MLGx)<br><br>**O R D E R DISCHARGING ORDER TO SHOW CAUSE AND GRANTING PRELIMINARY INJUNCTION FREEZING ASSETS** |

Before the Court is an Order to Show Cause Why a Preliminary Injunction Should Not Be Issued Freezing Defendant John Vescera's and Defendant First One Lending's Assets (Dkt. 85). After considering the Defendants' Response (Dkt. 99), Plaintiff's Reply (Dkt. 108), all supporting documents, and after holding a hearing on February 11, 2013, the Court ORDERS a Preliminary Injunction freezing Defendants' assets.

**I. Background**

The basic facts of this case are well known to the parties, and have been summarized by this Court in previous orders. *See, e.g.*, Order Denying Defendants' Motion to Dismiss and

Granting Plaintiff's Motion for a Preliminary Injunction (Dkt. 41). On March 22, 2012, Plaintiff Neighborhood Assistance Corporation of America ("Plaintiff") initiated this action alleging that Defendants First One Lending and John Vescera ("Defendants") cheated desperate homeowners facing foreclosure by charging those victims one to two thousand dollars each based on false and misleading statements that Defendants provided mortgage modification services when, in fact, these services were provided to the public free of charge by Plaintiff, which is a non-profit community advocacy organization. *See* Second Amended Complaint ("SAC") (Dkt. 80). On May 15, 2012, this Court issued an order denying Defendants' Motion to Dismiss and, pursuant to Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), the Court granted Plaintiff's motion for a preliminary injunction enjoining Defendants from, *inter alia*, using Plaintiff's mark, "NACA", or confusingly similar marks or slogans, or referring people to Plaintiffs. *See* May 15, 2012, Order (Dkt. 41).

### a. Previous Preliminary Injunction

In granting Plaintiff preliminary injunctive relief, this Court made the following findings and conclusions of fact and law: that this Court has jurisdiction over Defendants as well as their activities; that Plaintiff is likely to succeed on the merits in its "false association" claim under the Lanham Act; that Plaintiff has suffered immediate and irreparable harm from Defendants' activities; and that the balance of the equities, when weighed, heavily favors Plaintiff. *See* May 15, 2012, Order.

While Defendants argue, in their most recent filings with the Court, that the May 15, 2012, preliminary injunction was granted based on facts that "have now been determined not to be applicable," Def's Opp'n (Dkt. 99) at 22-23, the Court disagrees. In granting the original injunction, the Court undertook a comprehensive examination of evidence relating to the five elements of a false association claim in determining that Plaintiff was likely to succeed on the merits, the bulk of which was focused on infringing and misleading activities that have never been called into dispute. *See* May 15, 2012, Order at 24-29 (citing, *inter alia*, *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996) (breaking down false association statute into elements)). Defendants' three examples of the so-called "changed

2

facts" include (1) an assertion that two websites "upon which the Court made substantial findings have now been shown not to have any relationship to Defendants"; (2) an assertion that "Defendant did register as a Referral Agent with NACA"; and (3) the fact that Plaintiff may have known about First One's infringing activities as early as September 13, 2011, yet "chose to do nothing about it for 6 months." Def's Opp'n at 23.

First, the "National Mortgage Health Center" and "National Mortgage Assistance Center" websites have *not* been shown to have no relationship to Defendants, as Defendants argue; Plaintiff's evidence supporting the involvement of Defendants in those websites remains persuasive, particularly since Defendants involvement with substantially similar websites (www.lmxinfo.com and www.First2Help.com) has been established. *See* Pl's Reply (Dkt. 108) at 2-3 n. 1; McNamara Decl. Ex. N (Rule 30(b)(6) Depo.) at 186-95. Second, Defendant continues to argue, without citing any legal authority, that its alleged "NACA Referral Agent" status somehow nullifies Plaintiff's false association claims, but Plaintiff correctly points out that this argument was unavailing in Defendants' opposition to the original preliminary injunction because the "program First One registered to participate in has nothing to do with NACA's Home Save Program, which is at issue here." Pl's Reply at 3 n. 1; *see also* Supp. Decl. of Erik Exum (Dkt. 34). Finally, the fact that Plaintiff may have failed to send any "cease and desist" letters to Defendants before filing suit with a false association claim has no bearing on any of the five elements discussed by this Court when it determined that Plaintiff was likely to succeed on the merits of that false association claim. *See* May 15, 2012, Order at 24-29. Indeed, the fact that Defendants continued to pursue infringing activities *after* this suit was filed, right up until the Court issued its Preliminary Injunction in May of 2012, suggests that a mere "cease and desist" letter would not have prompted Defendants to change their behavior. *See* Pl's Reply at 14-15 n. 6; McNamara Reply Decl. Ex. R.

### b. TRO Freezing Defendants' Assets and Current Order to Show Cause

On January 15, 2013, Plaintiff presented evidence to this Court concerning Defendants' destruction of First One's records and computers after the issuance of a preliminary injunction in May 2012, the knowing forgery of declarations submitted to this Court, the recent sale of

Defendant Vescera's home and his subsequent refusal to answer questions or provide discovery related to his assets; Plaintiff moved *ex parte* for a temporary restraining order limiting Defendants from transferring their assets without prior approval, in accordance with Federal Rules of Civil Procedure 64 and 65 and the laws of the State of California. Plaintiff established a reasonable basis for this Court to conclude it was necessary to prevent Defendants from transferring their assets and thus avoiding an equitable accounting for their profits from Defendants' false association activities under the Lanham Act or other relief in this action. *See* TRO (Dkt. 85). Therefore, this Court issued the requested Temporary Restraining Order and Order to Show Cause on January 16, 2013. *See id.*

On February 11, 2013, this Court heard arguments on the granting of a preliminary injunction freezing Defendants' assets. The Court having reviewed the memoranda, declarations and exhibits filed by both parties, and having heard oral arguments, makes the following findings and conclusions and enters an order freezing Defendants' assets.

**II. Discussion**

**a. The Court has the Authority to Freeze Defendants' Assets**

The Ninth Circuit has held that where a plaintiff is entitled to equitable relief, an order freezing a defendant's assets "is appropriate in order to preserve the status quo, so that assets can be preserved to satisfy an equitable decree." *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1525 (S.D. Cal. 1989), *aff'd sub nom. Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992) (citing *Federal Trade Commission v. H.N. Singer, Inc.,* 668 F.2d 1107, 1112 (9th Cir.1982) (prejudgment preliminary injunction to freeze assets necessary to preserve the possibility of rescission of contracts and restitution of money obtained by fraud)). In a Lanham Act case, an order freezing assets "is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

While an asset-freeze injunction is improper "if used solely to preserve assets for use in satisfying a claim for money damages," *Datatech Enterprises LLC v. FF Magnat Ltd.*, 2012 WL 4068624 *4 (N.D. Cal. Sept. 14, 2012) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance*

4

*Bond Fund, Inc.,* 527 U.S. 308, 330–33 (1999)), where an equitable remedy is available, the district court "has the power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy." *F.T.C. v. H.N. Singer, Inc.,* 668 F.2d 1107, 1112 (9th Cir.1982); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 n. 4 (9th Cir.2003); *Ellipso, Inc. v. Mann,* 480 F.3d 1153, 1160 (D.C.Cir.2007).

Here, as in *Reebok*, because Plaintiff will be entitled under the Lanham Act to an equitable accounting of Defendants' profits stemming from its false association with Plaintiff's mark, the Court has the authority to issue a preliminary injunction freezing Defendants' assets. *See Reebok Int'l*, 970 F.2d at 559 (9th Cir. 1992); *see also Datatech Enterprises*, 2012 WL 4068624 at *5 ("That the statute explicitly provides for such a remedy does not strip it of its equitable character.") (citing *Newby v. Enron Corp.,* 188 F.Supp.2d 684, 700 (S.D.Tex.2002)).

In their briefs and at oral argument, Defendants urge the Court to read *Reebok* to prohibit, very broadly, any freeze on assets that are not obviously traceable to First One's profits during the alleged infringing activities, and Defendant argues that freezing all of Defendants' $2.5 million in assets goes beyond the reach of an appropriate intermediate remedy. In fact, that very argument was rejected by the Ninth Circuit in *Reebok* when it was raised by the defendants, and the court held that a total asset freeze represented appropriate "'intermediate relief': it is an equitable provisional remedy designed to secure the availability of Reebok's equitable right to an accounting of Betech's profits." *Reebok*, 970 F.2d at 560-61 (holding that "the assets frozen by the district court thus were not 'matter[s] lying wholly outside the issues in the suit' nor 'property which in no circumstances can be dealt with in any final [relief] that may be entered'")(quoting *DeBeers Consolidated Mines, LTD. v. United States,* 325 U.S. 212, 222-23(1945)).

However, even assuming Defendants' arguments to be true, the Court would still retain the power to freeze all of Defendants' assets. As discussed at length in Section II(c), *supra*, Plaintiffs have shown that Defendants generated over $4 million in revenue during the time period at issue in this case, and it will be Defendants' burden to prove any deductions from gross revenue in determining the amount of disgorgeable profits. *See Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 U.S. Dist. LEXIS 51172 (C.D. Cal. May 24, 2010) (internal citation

omitted). Defendants have not met that burden. In addition, because all of Defendant Vescera's income came from First One revenues, and because Defendant did not segregate his own assets from those of First One (using revenues to make home payments, car payments, and personal expenses), any post-judgment accounting could potentially reach all of Defendants' $2.5 million in currently freezable assets.

### c. Plaintiff has shown a likelihood of dissipation of the claimed assets

Asset-freeze injunctions require a showing by the plaintiff of "a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir.2009) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 881 (9th Cir.2003)). The Ninth Circuit in *Johnson* identified several factors that suggest a defendant would be likely dissipate assets, including that defendant's prior behavior in the case, a history of "improperly diverted funds" from a company, and a refusal to disclose asset information. *Johnson*, 572 F.3d at 1087. Accordingly, as was the case in *Johnson*, this Court finds that "such an individual is presumably more than capable of placing assets in his personal possession beyond the reach of a judgment." 572 F.3d at 1085.

Here, much like the plaintiff in *Johnson*, Plaintiff has submitted persuasive evidence showing that Defendant Vescera (1) destroyed a huge number of discoverable paper files and computers at the First One offices in June of 2012, immediately after this Court issued a Preliminary Injunction indicating that Plaintiff was likely to succeed on the merits; (2) submitted forged or knowingly false declarations to the Court in opposition to Plaintiff's original Motion for Preliminary Injunction; (3) sold his $3.5 million house in Laguna Niguel, and continues to insist that the money related to that sale is beyond the reach of any judgment; (4) submitted incomplete or misleading responses to discovery requests regarding assets and profits; and (5) has an admitted history of diverting funds from First One to pay his personal expenses. *See* Pl's App. for a TRO (Dkt. 83) at 5-12 (citing McNamara Dec. and relevant exhibits).

In addition, regarding the amount of potentially recoverable profits, Plaintiff correctly argues that it will likely meet its minimum burden showing that Defendants' revenues of over $4 million since 2009 are connected to their Lanham Act violations. *See* Pl's Reply at 13. "In

computing a defendant's profits for violations of the Lanham Act, both the language of Section 1117 and the case law indicate that the defendant has the burden of proof as to any deductions from his gross sales." *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 U.S. Dist. LEXIS 51172 (C.D. Cal. May 24, 2010) (internal citation omitted) (citing to *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124 (1968); 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). It will be Defendants' burden to show the portion of their revenues that were not connected to the violation, but Plaintiff will potentially recover profits that outstrip Defendants' current freezable assets.

### d. Balancing the hardships

While the exercise of this Court's equity power to order a preliminary injunction freezing Defendants' assets requires careful consideration, the Court is satisfied that Plaintiff has a likelihood of showing at trial that Defendants' false association and infringing activities upon Plaintiff's trademark caused irreparable harm to the reputation of, not to mention the mission of, Plaintiff. Due to Defendants' misleading and evasive behavior throughout the life of this case, the Court is concerned that unless the assets are frozen, Defendants may hide ill-gotten funds and assets that have either come directly from the profits of First One's infringing activities or have been comingled with those assets. Any dissipation of the profits that would be disgorged as a result of Plaintiff's success on the merits of its claim would cause Plaintiff irreparable harm, particularly considering the fact that Plaintiff's Second Amended Complaint makes clear that any disgorged profits would be put towards the restitution of former First One clients who lost money due to Defendants' misleading infringing activities. *See* SAC (Dkt. 80) at 26; Pl's Reply (Dkt. 108) at 15 n. 7.

The Court recognizes that the freezing of assets could work a hardship on the Defendants. However, "a narrowly tailored asset freeze would prejudice [Defendants] less than a denial of relief would prejudice Plaintiff[]." *Johnson*, 572 at 1085. Any prejudice to Defendants Vescera and First One will be substantially mitigated by limiting the injunction to permit Vescera $10,000 and $25,000, respectively, per month to cover "normal living expenses and legal fees." *Id.* In

7

addition, the Court will allow Defendants to petition the Court at any time for consent to an asset transfer or disposal that would otherwise violate the asset freeze. *See id.* (finding that permission to petition the Court for such exceptions substantially mitigates the hardship experienced by a defendant) (citing *Republic of Phillipines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc) (finding no hardship where an asset freeze does not extend to normal living expenses and legal fees)). Accordingly, "no undue hardship need be felt by defendants as a result of this order." *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. at 1525.

### e. An injunction is in the public interest

Plaintiff has shown a preliminary injunction is in the public interest. *See Winter,* 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1127, 1135 (9th Cir. 2011). As was previously stated by this Court, "[a]ll too frequently, intellectual property disputes between two faceless entities can make the judiciary appear to the public like a mere handmaiden to corporate interests, blessing corporations' efforts to commodify an ever-growing swath of the nation's intellectual capital. This case is a refreshing reminder that the policy justification for trademark law is to protect *human beings*, not corporations." May 15, 2012, Order at 32. In general, the purpose of the Lanham Act is "to protect the public" from false and deceptive practices that create confusion in the marketplace. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982) (upholding preliminary injunction and noting that "[u]nlike prior law, the Lanham Act is directed toward protecting the consumer"). Here, a preliminary injunction freezing Defendants' assets to preserve the possibility of an equitable remedy would clearly serve the public interest, as Plaintiff's Second Amended Complaint makes clear that disgorged profits will be used to make restitution to those people harmed by Defendants' unlawful actions. *See* SAC (Dkt. 80) at 26; Pl's Reply (Dkt. 108) at 15 n. 7.

### III. Disposition

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

I. FINDINGS

1. For the reasons stated in this Order and in the Court's previous Order granting a Preliminary Injunction, NACA is likely to prevail on the merits of its claims under the Lanham Act;

2. The Court's ability to grant effective final relief is likely to suffer irreparable harm and NACA is likely to suffer irreparable harm if a preliminary injunction freezing First One's and Vescera's assets is not issued because if the assets are not frozen First One and Vescera will likely sell, transfer, assign, or otherwise dispose of or conceal their assets before judgment is entered in this matter;

3. The balance of hardships weighs in favor of issuing the preliminary injunction order;

4. This order is in the public interests; and

5. Because of the size of the assets frozen and the potential for lost interest due to an inability to transfer funds, NACA is required to post security in the amount of $50,000. NACA may submit a bond in that amount on or before February 25, 2013, or NACA may deposit $50,000 directly with the Court on or before that date in the form of a cashier's check.

## II. DEFINITIONS

1. "Defendants" means Defendants First One and John Vescera, individually and doing business under any other name.

2. "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to, any real and/or personal property, including without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located

3. "Financial Institution" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

## III. PRELIMINARY INJUNCTION

IT IS THEREFORE ORDERED that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, distributors, corporations, subsidiaries, affiliates, successors, assigns, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, except to the extent required to pay reasonable attorneys' fees not to exceed $25,000 per month and living expenses not to exceed $10,000 per month, or as agreed to in writing by NACA, or as directed by further order of the Court, are hereby restrained and enjoined from directly or indirectly:

    1. Selling, liquidating, assigning, transferring, converting, loaning, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, which are:

        a. in the actual or constructive possession of Defendants;

        b. owned or controlled by, or held, in whole or in part, for the benefit of, or subject to access by, or belonging to, Defendants; or

        c. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, Defendants, including, but not limited to, any assets held by or for Defendants at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, payment service provider, or other financial institution or depository of any kind including, but not limited to, assets at Wells Fargo Bank;

2. Opening or causing to be opened any safe deposit boxes titled in the name of Defendants, or subject to access by Defendants;

3. Incurring charges on any credit card issued in the name, singly or jointly, of Defendants;

4. The funds, property and assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order, including without limitation, those acquired by loan or gift. Defendant shall hold all assets, including without limitation, payments, loans, and gifts, received after service of this Order; and

5. Notwithstanding the asset freeze provisions above, Defendant may pay reasonable, usual, ordinary, and necessary living expenses not to exceed $10,000 per month, and attorney's fees not to exceed $25,000 per month, without prior written approval from NACA or the Court, pursuant to the following procedures: Vescera is allowed one withdrawal a month from his Wells Fargo Bank account ending in the numbers 2586 up to $10,000 for payment living expenses and $25,000 for payment of attorney's fees;

6. Notwithstanding the above, this order shall not apply to Wells Fargo Bank checking accounts ending in the numbers 7392 or 1516.

IV. DISCLOSURE OF ACCOUNT INFORMATION

IT IS FURTHER ORDERED that Defendants must provide to counsel for NACA copies of monthly account statements for all accounts covered by this order provide the copies of the account statements within five business days of receipt by Defendants.

V. DUTIES OF ASSET HOLDERS

IT IS FURTHER ORDERED that any financial institution, or any person or other entity served with a copy of this Order, or who otherwise has actual knowledge of this Order, that has

possession, custody, or control of any account, asset, or document held on behalf of, or relating or belonging to Defendants, shall:

    1. Hold and retain within such entity's or person's control, and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any funds, documents, property, or other assets held by or under such entity's or person's control:

        a. On behalf of, or for the benefit of Defendant or other party subject to Section III above;

        b. In any account maintained in the name of, or subject to withdrawal by Defendant or other party subject to Section III above;

        c. That are subject to access or use by, or under the signatory power of Defendant or other party subject to Section III above;

    2. Deny access to any safe deposit boxes that are either:

        a. titled in the name, individually or jointly, of Defendant or other party subject to Section III above; or

        b. subject to access by Defendant or other party subject to Section III above; and

    3. The accounts subject to this provision include existing assets and assets deposited after the effective date of this Order. This Section shall not prohibit transfers in accordance with any provision of this Order, or any further order of the Court.

## VI. SERVICE OF ORDER

IT IS FURTHER ORDERED that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or by U.S. Mail, on: (1) Defendants; (2) any financial institution, entity, or person that holds, controls, or maintains custody of any assets of Defendants, or that held, controlled, or maintained custody of any assets of Defendant; or (3) any other person or

entity that may be subject to any provision of this Order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

IT IS SO ORDERED.

DATED: February 11, 2013

_____
DAVID O. CARTER
United States District Judge